**UNITED STATES DISTRICT COURT**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JEFFREY BORING**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Eurofins NSC US, INC.**,<br><br>Defendant. | **Civil Action No.:**<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Jeffrey Boring ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Eurofins NSC US, Inc. ("Eurofins" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for entities like Eurofins to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products without making available a reasonable alternative standard to avoid those surcharges. This lawsuit challenges Defendant's unlawful practice of charging a "tobacco surcharge" under the Eurofins Health and Welfare Plan (the "Plan") in a manner that violates the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. ERISA permits health-contingent wellness programs that promote health if, and ***only if***, such programs strictly comply with the criteria governing these programs, including: (i) offering a meaningful and accessible *reasonable* alternative standard to any individual being charged extra based on a health factor; (ii) clearly

1

disclosing the availability of that alternative standard in "all plan materials" describing the surcharge; and (iii) making available the "full reward" to all participants who satisfy the reasonable alternative standard. *See* 29 U.S.C. § 1182; 42 U.S.C. § 300gg-4(j). Instead, Defendant imposes a discriminatory tobacco surcharge without making available, or notifying participants of, *any* alternative standard, let alone a *reasonable* one. The only avenue Defendant offers to escape the surcharge is for the participant to attain the underlying health outcome itself—to abstain from all tobacco use for at least three months—which is precisely what ERISA and the regulations forbid.

2.       Tobacco surcharges have become more prevalent in recent years but, to be lawful, plans must make available a *compliant* "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers **must** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements.

3.       ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, an employer must provide a clearly defined, reasonable alternative

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard; plans must also provide proper notice to all participants. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendant's Plan imposes a tobacco surcharge while failing to offer compliant avenues to avoid the surcharge and failing to provide proper notice, in violation of ERISA.

4.     Defendant's Plan does not clearly or consistently establish a reasonable alternative standard that informs participants of all available avenues to avoid the surcharge. There is no indication in the benefit guides that surcharges will be reimbursed to those participants who satisfy the alternative standard. At the same time, Defendant fails to disclose in all Plan materials (i) contact information for accessing the alternative standard, (ii) that participants have access to an alternative standard through which they may qualify for the full reward, or (iii) that they have the right to a physician-directed alternative. In doing so, Defendant withholds critical information from participants needed to properly assess their rights and, in effect, shifts Plan costs onto employees based on a health factor without satisfying the requirements needed to take advantage of ERISA's safe harbor.

5.     The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income

and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

6.      Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to

---

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, **the same, full reward must be provided to that individual** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1,

rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . .." *Id.*, 33160 (emphasis added). Defendant violates these requirements by failing to make available *any* alternative standard at all—reasonable or otherwise—operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly notify participants of avenues available to them to avoid the surcharge in benefit guides, plan documents, and summary plan descriptions ("SPDs"). These failures constitute direct violations of ERISA's wellness program regulations.

7.      Defendant cannot qualify for the statutory safe harbor under ERISA § 702(b)(2)(B), 29 U.S.C. § 1182(b)(2)(B), because, although it imposes a premium differential based on a health factor (i.e., tobacco use) its wellness program fails to satisfy the mandatory criteria that "***must*** be satisfied" for such a program to be lawful. Final Regulations, 78 Fed. Reg. 33158, 33160 (emphasis added). Compliance with each of the five requirements set forth in 29 C.F.R. § 2590.702(f)(4) is a precondition to the safe harbor and failure on any one defeats it entirely. Defendant's program fails on multiple, independent grounds.

8.      First, Defendant's program is not "reasonably designed to promote health or prevent disease," as required by 42 U.S.C. § 300gg-4(j)(3)(B) and 29 C.F.R. § 2590.702(f)(4)(iii). The regulation expressly provides that "to ensure that an outcome-based wellness program is

---

the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, ***a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard***." 29 C.F.R. § 2590.702(f)(4)(iii) (emphasis added). A program that imposes a tobacco surcharge while offering *no* alternative standard at all is, by definition, not reasonably designed within the meaning of the regulation. The only avenue Defendant offers to escape its surcharge is for the participant to quit for three full months with no programmatic support, no graduated path, and no accommodation for individuals for whom that outcome is unreasonably difficult or medically inadvisable. That is the textbook definition of a "subterfuge for discriminating based on a health factor."

9. Second, Defendant denies the "full reward" to similarly situated participants who would otherwise satisfy a reasonable alternative standard, in direct violation of 42 U.S.C. § 300gg-4(j)(3)(D) and 29 C.F.R. § 2590.702(f)(4)(iv). ERISA and the governing regulations, as well as the accompanying preamble, make unequivocally clear that when a participant satisfies a reasonable alternative standard, the plan must provide a reward retroactive to the beginning of the plan year. *See* 78 Fed. Reg. at 33163. Defendant's program does not—and structurally cannot—do that. Because Defendant offers no alternative standard at all, no participant who is unable to meet the initial tobacco-free standard has any path to the full reward, retroactive or otherwise. The surcharge dollars deducted from a tobacco-using participant's paycheck remain forfeited to Defendant in perpetuity unless and until the participant achieves three consecutive months of complete tobacco abstinence, at which point relief is available only on a prospective basis through the next available enrollment opportunity. By design, then, the "full reward" is unavailable to every participant who is subject to the surcharge.

10.     Third, Defendant's benefit guides and other participant-facing communications that discuss the premium differential fail to disclose any mechanism by which participants subject to the surcharge may avoid it through a reasonable alternative standard, and fail to disclose the right to a physician-directed alternative. Federal law requires that a plan "disclose in **all plan materials** describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added). Defendant's participant-facing materials describe the tobacco surcharge and the higher premium contributions imposed on tobacco users, but do not disclose any compliant alternative avenues by which participants may avoid the surcharge and qualify for the reward. Specifically, Defendant's open enrollment materials, benefits manuals, and other plan communications fail to inform participants that they may complete a reasonable alternative standard to earn the full reward or that they have a right to a physician-directed alternative, as expressly required by ERISA and the wellness program regulations. *See* 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v). Proper notice is critical because failing to notify participants can chill engagement with the "program of health promotion" and deter participants from taking steps toward bettering their health. Because Defendant's Plan materials do not contain these required disclosures, Defendant cannot invoke ERISA's wellness program safe harbor as an affirmative defense. The tobacco surcharge imposed through the Plan therefore constitutes unlawful discrimination based on a health-status-related factor in violation of ERISA.

11.     The consequence of Defendant's violations is financial, and it inures to Defendant's benefit. Defendant collects $9.23 per paycheck from each surcharged participant, roughly $240 per year per surcharged participant. Across Defendant's workforce, these surcharges aggregate to substantial annual sums. Because Defendant fails to provide a compliant *reasonable* alternative standard that makes the full reward available to all participants who satisfy it, the entire surcharge

collected is retained by Defendant rather than refunded. Upon information and belief, Defendant retains these funds in its general account and uses them to offset its own contributions to the Plan, allowing Defendant's own assets to remain in its accounts where they accrue interest and earnings to Defendant rather than to the Plan and its participants. By imposing and retaining a surcharge that does not satisfy the safe harbor, Defendant has shifted the cost of Plan funding from itself onto its employees in violation of 29 U.S.C. § 1182 and 42 U.S.C. § 300gg-4, and the implementing regulations, and has converted participant contributions into a source of self-funding in violation of its fiduciary obligations under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

12.    Because Defendant imposes a $9.23 bi-weekly tobacco surcharge and does not make available *any* reasonable alternative standard or provide the required notice in any Plan materials discussing the surcharge, the Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied." Final Regulations, 33160. As a result of these deficiencies, Defendant cannot take advantage of the statutory safe harbor and, therefore, the surcharge functions as a penalty rather than a compliant wellness incentive. Deficient and missing notice is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers.

13.    This Complaint alleges that Defendant imposes a health-based tobacco surcharge without making available any compliant alternative standard to avoid the surcharge. Defendant bears the burden of proving that its tobacco surcharge is lawful by showing that its wellness program fully complies with ***every*** requirement under ERISA. Charging participants a tobacco surcharge while failing to inform them of any *reasonable* alternative standard that makes available the "full reward," and failing to provide proper notice, makes the surcharge facially noncompliant. No amount of *post hoc* justifications can cure these fundamental defects. This type of

discrimination is permissible only if employers meet strict criteria, which Defendant does not. Defendant's Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

14.     Participants like Plaintiff are permitted to challenge a surcharge when there is no compliant wellness program made available or when employers provide deficient or misleading information. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions along with facts showing the deficiencies in the wellness program, the burden shifts to the employer, Eurofins, to demonstrate that the wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to Defendant, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

15.     Plaintiff is a former employee of Eurofins who paid the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

16.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendant from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf

of himself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

17.     Plaintiff Jeffrey Boring is, and at all times mentioned herein was, an individual citizen of the Commonwealth of Pennsylvania residing in the County of Lancaster. Plaintiff is a current employee of Defendant Eurofins. Plaintiff paid a tobacco surcharge of $9.23 biweekly (approximately $240 annually) under the Plan as a condition of maintaining health insurance coverage under the Plan.

18.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

19.     Defendant Eurofins is a Delaware corporation that, upon information and belief, is part of a broader network of laboratory and testing companies that operate throughout the U.S., with benefits administration functions located in Pennsylvania. At all relevant times, Defendant sponsored, maintained, and administered the Plan. Defendant exercised discretionary authority and control over the design and administration of the Plan, including but not limited to determining eligibility for participation in the wellness program, establishing and enforcing the terms and timing of any reasonable alternative standard, overseeing the content and dissemination of Plan-related communications, and directing or controlling the collection and disposition of tobacco surcharge contributions. By virtue of this discretionary authority and control, Eurofins functioned as a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

20.     At all relevant times, Eurofins employed tens of thousands of employees and maintained a Plan covering a substantial number of participants and beneficiaries. The Plan is an employee welfare benefit plan subject to ERISA, 29 U.S.C. § 1002(1) and (3). As of December 31, 2023, the Plan covered more than 12,000 participants.

## JURISDICTION AND VENUE

21.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

22.     This Court has personal jurisdiction over Defendant because Defendant has significant operations in this District and, upon information and belief, Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiff in the Commonwealth of Pennsylvania, and Defendant has purposefully availed itself of the privilege of conducting business in the Commonwealth of Pennsylvania.

23.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District, Defendant conducts business in this District, and Defendant may be found in this District. Plaintiff resides in Lancaster County, Pennsylvania, which is within the Eastern District of Pennsylvania, and was subject to the unlawful tobacco surcharge in this District.

## FACTUAL BACKGROUND

I.      **DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE**

   A. **Statutory and Regulatory Requirements**

24.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution

11

that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

25.    The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe harbor exception—must strictly adhere to the mandated regulatory requirements.

26.    Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as she finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

27.    Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations

(i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

28.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163 (emphasis added). "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

29.     The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if __all__ of the [] requirements are satisfied***." (emphasis added)).

   **B.  Regulatory Criteria**

13

30.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

31.     The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

32.     Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

33.     The reasonable design criterion, § 2590.702(f)(4)(iii), requires that an outcome-based wellness program have "a reasonable chance of improving the health of, or preventing disease in, participating individuals," not be "overly burdensome," not be "a subterfuge for discriminating based on a health factor," and not be "highly suspect in the method chosen to promote health or prevent disease." Final Regulations, 33163. The determination is "based on all the relevant facts and circumstances," and the requirement is intended to ensure that wellness programs operate as genuine health-promotion mechanisms rather than vehicles for extracting premium differentials from participants identified by a health factor. *Id*. Most fundamentally, the regulation requires that, for an outcome-based program, "a reasonable alternative standard to qualify for the reward ***must*** be provided to any individual who does not meet the initial standard." 29 C.F.R. § 2590.702(f)(4)(iii) (emphasis added). The wholesale absence of a reasonable alternative standard is, on its face, a failure of reasonable design.

34.     A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165.

15

Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual* participating in the program should be able to receive the ***full amount of any reward or incentive*. . ..**" *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is *mandatory*, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

35. The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180. Defendant's practice is even further removed from compliance: Defendant offers no cessation program tied to the surcharge at all, reasonable or otherwise.

36. For health contingent wellness programs, the Final Regulations require the notice be disclosed "in *all* plan materials describing the terms of" the program. 42 U.S.C. § 300gg-

4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of a reasonable alternative standard to the surcharge violate these requirements.

## II.    DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

37.    Defendant's tobacco surcharge is discriminatory because Defendant does not make available *any* compliant outcome-based wellness program that would allow participants to avoid the surcharge during the Plan year. Under the Plan, participants identified as tobacco users, and participants whose enrolled spouses or domestic partners are identified as tobacco users, are assessed a tobacco surcharge of $9.23 per paycheck (approximately $20 per month, or $240 per year), which is collected through employees' regular pre-tax payroll deductions for medical coverage. The surcharge applies throughout the Plan year on a bi-weekly basis and is imposed in addition to the underlying cost of coverage.

38.    Defendant defines "tobacco use" for purposes of triggering the surcharge as "any use of tobacco products[ ] during the previous 3 months, regardless of frequency," including but not limited to cigarettes, cigars, chewing tobacco, and electronic cigarettes. Under that definition, an employee who consumed any amount of tobacco even once during the prior three months—regardless of context, frequency, or whether the employee has since quit—is subjected to the surcharge for the entire Plan year. To avoid the surcharge, the employee must remain entirely

tobacco-free for at least three consecutive months and re-attest at the next available enrollment opportunity. Defendant offers no other path.

39. Defendant's program fails to offer the opportunity to qualify for the reward at least once each year under 42 U.S.C. § 300gg-4(j)(3)(C) because it does not offer a program. The statute conditions the availability of a health-contingent reward on the existence of a program through which participants may attempt to qualify for that reward during the plan year. Here, Defendant provides no such program, no process, and no mechanism by which a participant may engage in any activity or satisfy any alternative standard to obtain the reward. In the absence of any programmatic structure, Defendant necessarily fails to provide participants with an annual opportunity, or any opportunity, to qualify for the reward, in direct violation of ERISA's wellness program requirements.

40. Defendant's program fails the reasonable design requirement on its face. The regulation expressly conditions a finding of reasonable design on the existence of a reasonable alternative standard: "to ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, *a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard.*" 29 C.F.R. § 2590.702(f)(4)(iii) (emphasis added). Defendant offers no alternative standard at all. The Plan provides no graduated path, no cessation program tied to surcharge avoidance, no telephonic coaching, no counseling, and no opportunity for partial credit. The lone path the Plan offers is for the participant to attain the initial standard itself—complete tobacco abstinence for at least three months—which is what ERISA forbids.

41. Defendant also violates the full reward rule. Because Defendant offers no reasonable alternative standard at all, the "full reward" required by 42 U.S.C. § 300gg-4(j)(3)(D) and 29 C.F.R. § 2590.702(f)(4)(iv) is, by structural design, unavailable to every participant who does not meet the initial standard. Even a participant who quits tobacco the day after open enrollment, completes three full months of abstinence mid-year, and re-attests at the earliest opportunity, will receive only prospective relief at the next enrollment cycle, not retroactive reimbursement of surcharges already withheld. There is no mechanism in any participant-facing material describing how a tobacco-using participant may obtain the full reward retroactive to the beginning of the Plan year. Thus, Defendant has denied "all similarly situated individuals" the full reward required by ERISA's wellness program rules and unlawfully imposes higher premium contributions based on health status.

42. Upon information and belief, Defendant operates a separate participatory wellness program known as "Healthy Blue Rewards" ("HBR"), through which employees may earn points by completing certain wellness activities (including, among other things, an annual physical, a biometric blood draw, and limited preventive screenings) in exchange for a separate medical-premium discount in a future Plan year. The HBR program is not a reasonable alternative standard to the tobacco surcharge. Among the activities recognized by HBR is a 50-point "Tobacco Cessation Program" activity; however, completion of that activity does not eliminate, reduce, or refund the bi-weekly tobacco surcharge. The HBR program does not, and is not represented to, function as an alternative standard for purposes of the tobacco surcharge.

43. Even if Defendant attempts to invoke its HBR Tobacco Cessation Program activity as a purported alternative standard for the tobacco surcharge, the program would still fail. First, the program is not described in any participant-facing material as a means of avoiding or

recovering the bi-weekly tobacco surcharge. Second, completion of the activity does not provide the "full reward" the regulation requires; it provides 50 of 650 points needed to obtain a separate, future-year premium discount. Third, the documentation requirement—that the activity be "complete[d] either a Capital Blue Cross Tobacco Cessation Program or other program under a healthcare provider's supervision"—operates more like the Example 8 "go find a program yourself" approach the Final Regulations expressly identify as non-compliant. *See* Final Regulations, 33180.

44.     Defendant's benefit guides, open enrollment slide decks, enrollment instructions, and other participant-facing materials describing the tobacco surcharge fail to disclose any reasonable alternative standard or the right to a physician-directed alternative. Federal law requires that a plan "disclose in ***all plan materials*** describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added). Defendant's 2025 and 2026 Open Enrollment presentations, for example, describe the surcharge as a flat differential applied when "you or any dependent you are enrolling in a medical plan are tobacco users," defined as any tobacco use within the previous three months. The presentations contain no statement that any reasonable alternative standard exists, no contact information for accessing such an alternative, and no statement that the recommendations of a participant's personal physician will be accommodated. The same is true of Defendant's Open Enrollment Instructions and other Plan communications addressing the surcharge.

45.     Upon information and belief, the Plan's SPD likewise fails to clearly notify participants of any avenue available to them to avoid the surcharge other than attaining the underlying tobacco-free outcome. *See* 29 U.S.C. § 1022. Under ERISA, wellness program terms, including the availability of any reasonable alternative standard, are "generally required to be

disclosed in the summary plan description (SPD) . . . if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." Final Regulations, 33166. Here, the tobacco surcharge operates as a wellness program feature that increases participants' required premium payments by $9.23 per paycheck. Defendant was required to disclose any reasonable alternative standard to that surcharge—and the right to a physician-directed alternative—in the SPD and in all other participant-facing materials describing the surcharge. Upon information and belief, the Plan's SPD does not contain a compliant disclosure of any reasonable alternative standard, contact information for accessing one, or the required physician-accommodation statement. By omitting this information from the core Plan documents and participant communications, Defendant deprived participants of clear, accessible notice of material Plan terms and made it impossible for them to understand how to avoid the surcharge.

46.     These notice omissions independently violate ERISA's wellness program regulations and preclude Defendant from invoking the statutory safe harbor for health-contingent wellness programs. By presenting the tobacco-related premium differential without disclosing in any participant-facing material any entitlement to a reasonable alternative standard, the full reward, or the availability of the physician-accommodation process, Defendant's wellness program is opaque, inaccessible, and structured in a manner that deters participation rather than promoting health.

47.     Defendant should have provided clear and explicit disclosure in the SPD, in the annual benefit guides and open enrollment materials, in new-hire enrollment materials, and in any other communication describing the wellness program, that participants who could not satisfy the initial tobacco-use standard had the right to pursue a reasonable alternative standard that would make available the full reward, including a physician-directed alternative. Had Defendant provided

this required information across its participant-facing communications, Plaintiff and other similarly situated participants could have taken timely steps to obtain the premium relief to which they were entitled under ERISA's wellness program regulations. Defendant's failure to do so disqualifies the Plan from ERISA's wellness program safe harbor.

48.    The lack of any compliant alternative standard, coupled with the deficient disclosures, reflects a program designed and administered more for revenue generation and cost shifting than for bona fide health promotion. Upon information and belief, Defendant collects $9.23 per paycheck from each surcharged participant across a workforce of thousands of employees, and uses those funds to offset its own contributions to the Plan. By omitting material information regarding the full reward and the availability of a physician-accommodation pathway, Defendant deprived participants of the ability to make informed choices about their health coverage and financial obligations, violating the regulatory framework governing wellness programs and ERISA's fiduciary duties of loyalty and prudence.

49.    Allowing entities like Eurofins to exploit its participants and unlawfully extract substantial sums annually from them without making available a compliant wellness program transforms the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law. *Wilson v. Whole Food Mkt., Inc.*, No. 1:25-cv-00085, 2026 U.S. Dist. LEXIS 10099, at \*26–27 (W.D. Tex. Jan. 19, 2026) (discussing scenario of potential abuse of wellness programs). This type of conduct violates not only ERISA's antidiscrimination rules governing wellness programs but

also the statute's fiduciary duties of loyalty and prudence, as Defendant failed to administer the Plan solely in the interest of participants.

### III. DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

50. Defendant administered the tobacco surcharge by designating which participants are charged and withholding the premium differential directly from participants' paychecks as a before-tax Plan contribution, alongside required premium deductions. These deductions, including the tobacco surcharges, are part of the funding stream for Plan coverage, not separate penalties, and are treated the same way as other contributions made to support the Plan's medical benefits.

51. Upon information and belief, medical coverage under the Plan is funded by both employer and participant contributions, with Defendant paying a substantial portion of the cost of coverage and participants paying a defined portion through pre-tax payroll deductions. Defendant committed a defined company contribution toward the cost of coverage, with participants paying the balance through fixed-rate payroll deductions. By layering a tobacco surcharge on top of those required participant contributions, Defendant created what should have been a third stream of funding available to the Plan: (1) participants' required premium contributions, (2) Defendant's promised company contribution, and (3) the additional tobacco surcharge. But, upon information and belief, instead of allowing all three funding streams to flow into the Plan for the benefit of participants, Defendant used the tobacco surcharge to offset or reduce its own funding obligation. Because the cost of coverage for each tier is fixed, every dollar of surcharge collected reduced Defendant's contribution dollar-for-dollar. Thus, rather than increasing resources available to the Plan, the surcharge simply shifted costs away from Defendant and onto participants, leaving the

23

Plan with no greater funding than it would have received without the surcharge, while saving Defendant the contributions it would otherwise have been required to make.

52.    Upon information and belief, Defendant's diversion of surcharge proceeds is irreconcilable with the express terms of the Plan it administers. ERISA requires that plan assets be held for the exclusive benefit of participants and beneficiaries. The tobacco surcharges, withheld from participants' paychecks as Plan contributions and channeled through the same payroll-deduction mechanism that funds the Plan's medical benefits, constitute Plan assets the moment they are withheld. By structuring and administering the surcharge program so that the financial benefit of those Plan assets accrues to Defendant—through reduction of its own contribution obligations—rather than to participants, Defendant has used Plan assets for its own benefit in direct contravention of ERISA and, upon information and belief, the Plan's own terms.

53.    This practice constitutes classic self-dealing because Defendant—which upon information and belief, serves as both the Plan Sponsor and the named Plan Administrator, and which has reserved to itself discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits—used the mechanisms of the Plan to realize savings for itself, depriving the Plan of the full benefit of the three distinct funding streams it should have received. Defendant's actions caused the Plan to forgo the very employer contributions it was otherwise entitled to receive, in violation of ERISA's fiduciary duty standards.

54.    In doing so, Defendant failed to act solely in the interest of participants and beneficiaries, as ERISA requires. Rather than honor that duty, for example, by using surcharge proceeds to offset the premiums of non-tobacco-using participants, to enhance Plan benefits, or to reduce overall participant cost-sharing, Defendant used the funds to save money for itself. Upon information and belief, the money that Defendant did not have to contribute to the Plan sat in

24

Defendant's accounts and earned interest, while the Plan was deprived of the full amount of funding it should have received, stripping the Plan of employer dollars it was owed and converting those savings into a financial benefit for Defendant. This diversion of funds is self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under ERISA §§ 404 and 406.

## CLASS DEFINITION AND ALLEGATIONS

55.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

56.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

57.    Excluded from the Class are Defendant's officers and directors.

58.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

59.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a) and (b)(1).

60.    **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

25

61.    **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

b. Whether Defendant makes available a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendant's wellness program is reasonably designed to promote health;

d. Whether Defendant provided the required notice in *all* the Plan materials describing the surcharge;

e. Whether Defendant provided the required statement that participants' personal physicians' recommendations would be accommodated in *all* Plan materials describing the surcharge;

f. Whether Defendant's wellness program violates ERISA and the Final Regulations;

g. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge to offset its own contributions to the Plan;

h.  Whether Defendant breached its fiduciary duties by administering the Plan in a way as to refuse reimbursing participants who complete the alternative standard offered;

i. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

j. The appropriate mechanisms to determine damages on a class-wide basis.

62.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharges. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

63.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health

26

and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

64.     Plaintiff seeks declaratory and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide declaratory relief is issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL SURCHARGE – FAILURE TO PROVIDE THE FULL REWARD
### (Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv))

65.     Plaintiff re-alleges and incorporates herein by reference allegations 1–64 of this Complaint.

66.     ERISA § 702, 29 U.S.C. § 1182, and PHSA § 2705, 42 U.S.C. § 300gg-4, generally prohibits group health plans from discriminating against participants in eligibility, benefits, or premiums on the basis of any health factor, including tobacco use. The statute's narrow safe harbor for "programs of health promotion and disease prevention" does not exempt a plan that fails to comply with the implementing regulations. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B). Among the mandatory requirements that must be satisfied for a health-contingent wellness program to qualify for the safe harbor, the program must make "[t]he full reward . . . available to all similarly situated individuals." 42 U.S.C. § 300gg-4(j)(3)(D) and 29 C.F.R. §

27

2590.702(f)(4)(iv). The Departments have made the operation of this rule explicit: "if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual." Final Regulations, 33163.

67. Defendant's tobacco-surcharge program fails this requirement on its face. Defendant imposes a tobacco surcharge of $9.23 per paycheck on participants identified as tobacco users (or whose enrolled spouses or domestic partners are tobacco users), withheld bi-weekly from participants' pre-tax payroll contributions throughout the Plan year. Defendant offers no reasonable alternative standard at all by which a tobacco-using participant may earn the full reward. The Plan instead conditions removal of the surcharge solely on the participant's attainment of the underlying initial standard—three consecutive months of complete tobacco abstinence followed by re-attestation at the next available enrollment opportunity—and even then provides only prospective relief at the next enrollment cycle. There is no mechanism to obtain retroactive reimbursement of surcharges withheld during the Plan year.

68. By structuring and administering a program that provides no avenue at all by which a tobacco-using participant may obtain the full reward retroactive to the beginning of the Plan year, Defendant has denied the full reward to "all similarly situated individuals" and has treated similarly situated participants differently based on a health factor. A participant who quits tobacco mid-year and completes three months of abstinence receives only a partial, prospective reward beginning at the next enrollment cycle, and forfeits all surcharges withheld in the meantime. That is precisely the disparity ERISA forbids: a plan that delivers anything less than the full annual reward to participants who satisfy a reasonable alternative standard during the same plan year

28

violates the statute and regulations regardless of how the partial reward is calculated or rationalized.

69.     Because Defendant's program fails to provide the full reward to all similarly situated participants who satisfy the alternative standard—and indeed offers no alternative standard at all—Defendant cannot qualify for the statutory safe harbor under 29 U.S.C. § 1182(b)(2)(B), 42 U.S.C. § 300gg-4(j), or the implementing regulations at 29 C.F.R. § 2590.702(f). Defendant's tobacco surcharge is therefore an unlawful and discriminatory premium differential imposed on the basis of a health factor in violation of ERISA.

70.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Plaintiff and Class Members are entitled to equitable relief under ERISA § 502(a)(3), including disgorgement of unlawfully retained surcharge proceeds and such other equitable relief as the Court deems appropriate.

### COUNT II
**UNLAWFUL SURCHARGE – PROGRAM NOT REASONABLY DESIGNED TO PROMOTE HEALTH**
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(B); 29 C.F.R. § 2590.702(f)(4)(iii))**

71.     Plaintiff re-alleges and incorporates herein by reference allegations 1–64 of this Complaint.

72.     Independent of the full-reward violation pleaded in Count I, Defendant's tobacco-cessation program fails the "reasonably designed" requirement of 42 U.S.C. § 300gg-4(j)(3)(B), which the regulation makes clear is determined "based on all the relevant facts and circumstances." 29 C.F.R. § 2590.702(f)(4)(iii). To qualify for the statutory safe harbor under 29 U.S.C. § 1182(b)(2)(B), an outcome-based wellness program must have "a reasonable chance of improving the health of, or preventing disease in, participating individuals," must "not [be] overly burdensome," must "not [be] a subterfuge for discriminating based on a health factor," and must "not [be] highly suspect in the method chosen to promote health or prevent disease." 42 U.S.C. § 300gg-4(j)(3)(B); 29 C.F.R. § 2590.702(f)(4)(iii). The regulation expressly conditions a finding of reasonable design on the existence of a reasonable alternative standard: "[T]o ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, *a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard* based on a measurement, test, or screening." § 2590.702(f)(4)(iii) (emphasis added).

73.     Defendant's program fails the reasonable design requirement on its face. The Plan offers *no* reasonable alternative standard at all by which a tobacco-using participant may avoid the surcharge. The lone path the Plan provides for relief is for the participant to attain the initial standard itself (i.e., three consecutive months of complete tobacco abstinence) with no program support. A plan that imposes a tobacco surcharge while offering no path to relief other than achievement of the underlying outcome is, by definition, what 29 C.F.R. § 2590.702(f)(4)(iii) prohibits. A surcharge with no program and no alternative pathway is also "overly burdensome" and "highly suspect in the method chosen to promote health or prevent disease." Tobacco dependence is widely recognized as a chronic, relapsing condition that, in the great majority of

cases, requires multiple attempts and structured support to overcome. By offering no structured cessation pathway and no recognition of physician-directed alternatives, Defendant's program operates not as a genuine health-promotion mechanism but as a penalty extracted from participants identified by a health factor. That is the textbook definition of a "subterfuge for discriminating based on a health factor."

74. The wholesale absence of any reasonable alternative standard, the structural inability of any tobacco-using participant to obtain the full reward without first attaining the underlying outcome, the rigid three-month abstinence-and-re-attestation timing, and the absence of any physician-accommodation pathway combine to produce a program in which a substantial portion of surcharged participants will never satisfy it within the period required to obtain the full reward, converting what the statute treats as a narrow safe-harbor exception into a revenue-generating cost-shifting device.

75. Because Defendant's program is more designed as a "subterfuge for discrimination" than a "program of health promotion," Defendant cannot qualify for the statutory safe harbor under 29 U.S.C. § 1182(b)(2)(B), 42 U.S.C. § 300gg-4(b)(2)(B), or the implementing regulations, 29 C.F.R. § 2590.702(f). Defendant's tobacco surcharge is therefore an unlawful and discriminatory premium differential imposed on the basis of a health factor in violation of ERISA § 702 and is independently unlawful on this ground.

76. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans ***must*** comply with

to qualify as a compliant "program[] of health promotion and disease prevention," Plaintiff and Class Members are entitled to equitable relief under ERISA § 502(a)(3), including disgorgement of unlawfully retained surcharge proceeds and such other equitable relief in the Prayer for Relief or as the Court deems appropriate.

<u>COUNT III</u>

**UNLAWFUL SURCHARGE – FAILURE TO PROVIDE REQUIRED NOTICE**
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v))**

77.     Plaintiff re-alleges and incorporates herein by reference allegations 1–61 of this Complaint.

78.     Defendant's tobacco-cessation program violates 42 U.S.C. § 300gg-4(j)(3)(E), which requires that "[t]he plan or issuer involved shall disclose in all plan materials describing the terms of the program the availability of a reasonable alternative standard." Defendant describes the tobacco-related premium differential in multiple participant-facing materials, including its annual benefit guides distributed during open enrollment and emails sent to participants explaining the program, but those materials describe the surcharge and the higher premium contributions imposed on tobacco users without disclosing the availability of a reasonable alternative standard, without providing contact information for accessing such an alternative, and without informing participants that any mechanism exists by which they may avoid the surcharge. The Final Regulations make clear that "a plan disclosure that references a premium differential based on tobacco use . . . is a disclosure describing the terms of a health-contingent wellness program and, therefore, *must* include this disclosure." Final Regulations, 78 Fed. Reg. at 33166 (emphasis added). The statute's "all plan materials" requirement is unambiguous: every plan material that describes the terms of the program must include the required disclosure. Defendant's failure to do

32

so in its Open Enrollment materials and benefit guides, key documents that participants rely upon during enrollment and that inform them of a premium differential based on a health factor, violates 42 U.S.C. § 300gg-4(j)(3)(E) on its face. Defendant provides no notice because it offers no reasonable alternative standard.

79.     Defendant's notice failures further violate the implementing regulations at 29 C.F.R. § 2590.702(f)(4)(v), which expressly requires that the notice include not only the availability of a reasonable alternative standard and contact information for obtaining it, but also "a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v). Participants need this information because the statute references a medical hardship standard that necessitates the involvement of a physician. *See* 42 U.S.C. § 300gg-4(j)(3)(D)(i)(I) and (II). Defendant's benefit guides, Open Enrollment slide decks, Open Enrollment Instructions, online enrollment materials, and other participant-facing communications discussing the program describe the program's terms without including any physician-accommodation statement. The omission of the physician-accommodation statement from these participant-facing materials is itself an independent violation of the regulations and precludes Defendant from invoking the statutory safe harbor.

80.     Defendant's notice failures independently violate ERISA's wellness program regulations and preclude Defendant from invoking the statutory safe harbor under 29 U.S.C. § 1182(b)(2)(B). By describing the premium differential in benefit guides, participant emails, Open Enrollment materials, and other participant-facing communications without including the disclosures required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v), Defendant has failed to satisfy the notice requirement and has imposed a discriminatory premium

33

differential on participants who, in many cases, would have pursued and obtained relief through a reasonable alternative standard had Defendant disclosed its availability as required by law.

81. Defendant's imposition of the tobacco surcharge therefore constitutes unlawful discrimination based on a health-status-related factor in violation of 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4 and is independently unlawful on this ground.

82. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

## COUNT IV
### BREACH OF FIDUCIARY DUTY
**(Violation of ERISA §§ 404 and 406; Plan-Wide Relief Under ERISA §§ 409 and 502(a)(3), 29 U.S.C. §§ 1109 and 1132(a)(3))**

83. Plaintiff re-alleges and incorporates herein by reference allegations 1–64 of this Complaint.

84. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye

single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

85.     Defendant fulfills a dual fiduciary role under the Plan as both Plan Sponsor and Plan Administrator, with discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits. Defendant exercised that discretionary authority year after year in administering the Plan within the meaning of 29 U.S.C. § 1002(16), and was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management and administration of the Plan and the tobacco surcharge program, including the decision, year after year, not to offer a compliant wellness program, not to make available any reasonable alternative standard, not to provide the required notices to participants, and, most importantly, what was done with the surcharge proceeds.

86.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use the tobacco surcharge program to benefit itself at the expense of the Plan and its participants. Defendant withheld substantial sums in tobacco surcharges from participants' paychecks as before-tax deductions, alongside other participant contributions to the Plan. These surcharges were Plan assets from the moment of collection. ERISA requires that plan assets be held for the exclusive benefit of participants and beneficiaries.

87.     Although the surcharges constitute Plan assets, upon information and belief, Defendant structured and administered the surcharge program so that the financial benefit of those assets accrues to Defendant rather than to the Plan and its participants. Upon information and belief, surcharge proceeds are either applied to offset Defendant's own contribution obligations to the Plan dollar-for-dollar, retained by Defendant in its general corporate accounts, or some combination of the two. Under any of these scenarios, the result is the same: Defendant uses the

35

surcharge program to reduce its own funding obligation, depriving the Plan of employer contributions it would otherwise have received. Rather than using surcharge proceeds to enhance Plan benefits, reduce premiums for non-tobacco-using participants, or otherwise to benefit participants as required by ERISA, Defendant uses the surcharges to relieve itself of the financial obligations it would otherwise bear. Upon information and belief, Defendant further profits by retaining additional monies in its general accounts that would otherwise have been contributed to the Plan, earning a float on those amounts at the Plan's expense.

88.    Defendant further breached its fiduciary duties by administering a Plan that did not conform with ERISA's antidiscrimination requirements. Defendant maintained the tobacco surcharge year after year without making available any compliant reasonable alternative standard that delivered the full reward to all similarly situated individuals; failed to administer any cessation program tied to surcharge avoidance whatsoever; and failed to ensure that participant-facing communications, including its Open Enrollment slide presentations, Open Enrollment Instructions, benefit guides, emails to participants describing the program, new-hire enrollment materials, and direct communications to surcharged participants, included the disclosures required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v). These omissions are incompatible with ERISA's fiduciary mandates of loyalty, prudence, and adherence to governing law.

89.    ERISA imposes the duty to monitor and supervise to ensure continued compliance with the law, including the accuracy and completeness of participant communications. Defendant failed to periodically review the surcharge program, the disposition of surcharge proceeds, or the participant-facing communications describing the program, despite its obligation to ensure the Plan's ongoing compliance with federal law and, upon information and belief, with the Plan's terms. Instead, Defendant allowed a structurally defective wellness program to persist year after

36

year, even though it resulted in discriminatory surcharges, deprived the Plan of the employer contributions it should have received, and diverted Plan assets to Defendant's own use.

90.     By imposing the tobacco surcharges and failing to offer a legally compliant alternative, Defendant used the proceeds to reduce its own contribution obligations to the Plan. Defendant has dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing. The surcharges should have supplemented, not displaced, Defendant's contributions, and the financial benefit derived from them should have flowed to participants rather than to Defendant. By using the surcharges to reduce its own funding obligation, Defendant has caused the Plan and its participants, including Plaintiff, to bear a cost burden that should have been borne by Defendant, leaving the Plan with less than what it should have received and leaving participants paying more than they should have been required to pay under ERISA's antidiscrimination rules.

91.     Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to offer any reasonable alternative standard that makes available the full reward to all similarly situated participants; failing to ensure that all participant-facing communications complied with the notice requirements of 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v); acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for years, to ensure compliance with ERISA's requirements. These breaches caused the Plan to suffer losses in the form of foregone employer contributions (i.e., opportunity cost) that should have flowed into the Plan for the exclusive benefit of participants. Had Defendant complied with its fiduciary duties, it

would have identified the deficiencies in its program, its communications, and its use of surcharge funds, and would have taken steps to correct the conduct.

92.    As a direct and proximate result of these fiduciary breaches, the Plan suffered losses, including but not limited to: (a) the foregone employer contributions Defendant would have been required to make to the Plan in the absence of the unlawful surcharge mechanism; (b) the lost investment returns and earnings the Plan would have received had those contributions been timely deposited into the Plan; (c) the float and interest earned by Defendant on funds that should have been contributed to the Plan; and (d) the diminution in Plan assets resulting from Defendant's use of surcharge proceeds for its own benefit rather than for the exclusive benefit of participants.

93.    Pursuant to ERISA § 409, 29 U.S.C. § 1109, Defendant is personally liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duty alleged herein, to restore to the Plan any profits Defendant made through the use of Plan assets, and to such other equitable or remedial relief as the Court may deem appropriate, including removal of the fiduciary.

94.    Plaintiff is authorized under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), to bring this action in a representative capacity on behalf of the Plan to obtain the relief provided by ERISA § 409. Plaintiff seeks, on behalf of the Plan, an Order granting the relief in the Prayer for Relief.

**<u>COUNT V</u>**
**BREACH OF FIDUCIARY DUTY**
**(Violation of ERISA §§ 404 and 406; Individual Relief under ERISA §§ 409 and 502(a)(2),**
**29 U.S.C. §§ 1109 and 1132(a)(2))**

95.    Plaintiff re-alleges and incorporates herein by reference allegations 1–64 of this Complaint.

96. At all relevant times, Defendant was an administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

97. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

98. Defendant fulfills a dual fiduciary role under the Plan as both Plan Sponsor and Plan Administrator, with discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits. Defendant exercised that discretionary authority year after year in administering the Plan within the meaning of 29 U.S.C. § 1002(16), and was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management and administration of the Plan and the tobacco surcharge program, including the decision, year after year, not to offer a compliant wellness program, not to make available any reasonable alternative standard, not to provide the required notices to participants, and, most importantly, what was done with the surcharge proceeds.

99. Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use the tobacco surcharge program to benefit itself at the expense of the Plan and its participants. Defendant withheld substantial sums in tobacco surcharges from participants' paychecks as before-tax deductions, alongside other participant contributions to the Plan. These

surcharges were Plan assets from the moment of collection. ERISA requires that plan assets be held for the exclusive benefit of participants and beneficiaries.

100.    Although the surcharges constitute Plan assets, upon information and belief, Defendant structured and administered the surcharge program so that the financial benefit of those assets accrues to Defendant rather than to the Plan and its participants. Upon information and belief, surcharge proceeds are either applied to offset Defendant's own contribution obligations to the Plan dollar-for-dollar, retained by Defendant in its general corporate accounts, or some combination of the two. Under any of these scenarios, the result is the same: Defendant uses the surcharge program to reduce its own funding obligation, depriving the Plan of employer contributions it would otherwise have received. Rather than using surcharge proceeds to enhance Plan benefits, reduce premiums for non-tobacco-using participants, or otherwise to benefit participants as required by ERISA, Defendant uses the surcharges to relieve itself of the financial obligations it would otherwise bear. Upon information and belief, Defendant further profits by retaining additional monies in its general accounts that would otherwise have been contributed to the Plan, earning a float on those amounts at the Plan's expense.

101.    Defendant further breached its fiduciary duties by administering a Plan that did not conform with ERISA's antidiscrimination requirements. Defendant maintained the tobacco surcharge year after year without making available any compliant reasonable alternative standard that delivered the full reward to all similarly situated individuals; failed to administer any cessation program tied to surcharge avoidance whatsoever; and failed to ensure that participant-facing communications, including its Open Enrollment slide presentations, Open Enrollment Instructions, benefit guides, emails to participants describing the program, new-hire enrollment materials, and direct communications to surcharged participants, included the disclosures required by 42 U.S.C.

40

§ 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v). These omissions are incompatible with ERISA's fiduciary mandates of loyalty, prudence, and adherence to governing law.

102.    ERISA imposes the duty to monitor and supervise to ensure continued compliance with the law, including the accuracy and completeness of participant communications. Defendant failed to periodically review the surcharge program, the disposition of surcharge proceeds, or the participant-facing communications describing the program, despite its obligation to ensure the Plan's ongoing compliance with federal law and, upon information and belief, with the Plan's terms. Instead, Defendant allowed a structurally defective wellness program to persist year after year, even though it resulted in discriminatory surcharges, deprived the Plan of the employer contributions it should have received, and diverted Plan assets to Defendant's own use.

103.    By imposing the tobacco surcharges and failing to offer a legally compliant alternative, Defendant used the proceeds reduce its own contribution obligations to the Plan, Defendant has dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing. The surcharges should have supplemented, not displaced, Defendant's contributions, and the financial benefit derived from them should have flowed to participants rather than to Defendant. By using the surcharges to reduce its own funding obligation, Defendant has caused the Plan and its participants, including Plaintiff, to bear a cost burden that should have been borne by Defendant, leaving the Plan with less than what it should have received and leaving participants paying more than they should have been required to pay under ERISA's antidiscrimination rules.

104.    Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to offer any reasonable alternative standard that makes available the full reward to all similarly situated participants; failing to ensure that all participant-facing communications

complied with the notice requirements of 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v); acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for years, to ensure compliance with ERISA's requirements. These breaches caused the Plan to suffer losses in the form of foregone employer contributions (i.e., opportunity cost) that should have flowed into the Plan for the exclusive benefit of participants. Had Defendant complied with its fiduciary duties, it would have identified the deficiencies in its program, its communications, and its use of surcharge funds, and would have taken steps to correct the conduct.

105.    As a direct and proximate result of these fiduciary breaches, members of the Class lost substantial sums in the form of unlawful surcharges that were deducted from their paychecks and applied for Defendant's benefit rather than for the benefit of participants as required by ERISA. Plaintiff, as a current employee, continues to suffer ongoing injury from the bi-weekly imposition of the surcharge.

106.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes Plaintiff to bring a civil action in Plaintiff's individual capacity to (A) enjoin any act or practice that violates ERISA or the terms of the Plan, or (B) obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce the provisions of ERISA or the terms of the Plan. Plaintiff seeks individual equitable relief under § 502(a)(3), including but not limited to the relief below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge;

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory relief as necessary and appropriate, including an Order that Defendant's program was unlawful and that Defendant should not further violate the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

43

H.  Restitution of all surcharge amounts Defendant collected;

I.  Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J.  Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.  An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: May 29, 2026                    Respectfully submitted,

                                        **SIRI & GLIMSTAD LLP**

                                        /s/ Michael Connett
                                        Michael Connett (Bar No. 311859)
                                        Oren Faircloth (*Pro hac vice forthcoming)*
                                        William H. Payne, IV (*Pro hac vice forthcoming)*
                                        700 S. Flower Street, Ste. 1000
                                        Los Angeles, CA 90017
                                        Main: (888) 747-4529
                                        E: moconnett@sirillp.com
                                        E: ofaircloth@sirillp.com
                                        E: wpayne@sirillp.com


                                        *Attorneys for Plaintiff and the Proposed Class*